IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIDGET SIMONDS | : | CIVIL ACTION |
| | : | NO. 13-7565 |
| v. | : | |
| | : | |
| DELAWARE COUNTY, et al. | : | |
| | : | |
| O'NEILL, J. | : | January 21, 2015 |

### MEMORANDUM

On August 6, 2014, plaintiff Bridget Simonds filed a second amended complaint against defendants Delaware County, Community Education Centers, Inc. (CEC), Dr. Ron Phillips, Kelly Mullan,[1] H. Craig, John/Jane Doe(s), Officer Dixon, Officer Lynch and Officer John Doe. Plaintiff alleges that defendants violated her Eighth Amendment right to necessary medical treatment while she was incarcerated at George Hill Correctional Facility (GHCF). Now before me are defendants Delaware County, CEC, Phillips and Mullan's partial motion to dismiss plaintiff's second amended complaint for failure to state a claim (Dkt. No. 21), defendant Craig's motion to dismiss (Dkt. No. 25) and plaintiff's responses (Dkt. Nos. 22, 27).[2] For the following reasons I will grant defendants' motions in part and deny them in part.

---

[1] Defendant represents that plaintiff incorrectly identified Kelly Mullan as "Kelly Mutian" in her complaint. See Dkt. No. 21 at 3. Plaintiff acknowledges in her briefing that "Mutian" and "Mullan" are the same defendant. See Dkt. No. 22 at 3. Thus, I will refer to defendant Mutian as "Mullan" throughout. See Dkt. No. 15 at 1.

[2] Pursuant to Federal Rule of Civil Procedure 4(m), plaintiff has 120 days from the filing of her complaint to serve process on defendants. See Fed. R. Civ. P. 4(m). In my memorandum on July 1, 2014 (Dkt. No. 15) I ordered that plaintiff serve process on all named defendants by July 14, 2014 or have her claims dismissed against those defendants who had not been served. On July 25, 2014, plaintiff issued a summons to Lynch and Dixon. Plaintiff has not provided proof of service regarding Lynch and Dixon since my July 1, 2014 decision. Plaintiff has not requested an extension of time to execute service of process on Dixon or Lynch and has not shown good cause for her delay. Thus, I will dismiss plaintiff's claims against Lynch and Dixon without prejudice to plaintiff's refiling of her complaint against them. See

**BACKGROUND**

Around December 28, 2011, plaintiff alleges she suffered an injury while on work release from her incarceration at Delaware County Prison. Dkt. No. 20 at ¶ 21. Plaintiff was taken to Riddle Hospital and diagnosed with a "comminuted distal radial fracture with extension into the inta-articular space." Id. at ¶ 22. Riddle Hospital discharged plaintiff to GHCF. The hospital allegedly informed Officer Lynch that plaintiff had to undergo an orthopedic evaluation within three days. Plaintiff alleges that at GHCF she was under the medical care of CEC, Dr. Phllips and medical staff members Craig, Mullan and Doe. Plaintiff alleges that the medical staff at GHCF knew that an outside doctor ordered an orthopedic evaluation of her wrist but that they deliberately ignored that order and held her for two months without any medical treatment for her injury. Id. at ¶ 26. Plaintiff alleges that she filed two grievances requesting medical care but was provided no care for her injury at GHCF. Id. at ¶ 28. As a result of not receiving any medical treatment for two months after her initial injury, plaintiff alleges that she suffered "malunion of the broken bones that required surgery and has resulted in permanent injury" including "nerve damage and paralysis of the right long finger . . . ." Id. at ¶ 39, 41.

On July 1, 2014, I granted defendants' motion to dismiss plaintiff's first amended complaint in part with leave to amend. See Dkt. No. 15. In her second amended complaint plaintiff brings three federal claims and one state law negligence claim against defendants. In Count I, plaintiff claims that defendants Phillips, Craig, Mullan and Doe are liable under 42 U.S.C. § 1983 for deliberate indifference to her serious medical needs. In Count II, plaintiff

---

MCI Telecomms. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1096 (3d Cir. 1995) (the district court must allow for extensions of time under Rule 4(m) where good cause for delay has been shown, but absent a showing of good cause the district court's decision to dismiss a case without prejudice or to extend time of service is discretionary), citing Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1305 (3d Cir. 1995).

alleges that Officers Lynch and Dixon conspired with Phillips, Mullan, Doe and CEC to deny her medical treatment with deliberate indifference to her serious medical needs. Id. at ¶ 30. In Count III, plaintiff alleges that Delaware County and CEC are liable under § 1983 for (1) maintaining a custom and policy of denying medical care for inmates near their release dates in order to save costs, (2) failing to train employees regarding the provision of medical care to inmates and (3) failure to adopt policies related to outside doctors' orders. Defendants now move to dismiss plaintiff's federal claims set forth in Counts I, II and III and plaintiff's claim for punitive damages.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Id. at 556. The Court of Appeals has made clear that after Ashcroft v. Iqbal, 556 U.S. 662 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially

plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556 U.S. at 678.  The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal:

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

Id. at 210-11, quoting Iqbal, 556 U.S. at 679.  The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679, quoting Fed. R. Civ. P. 8(a)(2).

## DISCUSSION

**I.      Section 1983 Claim against Delaware County and CEC**

Defendants move to dismiss Count III of plaintiff's second amended complaint which claims that Delaware County/CEC are liable for plaintiff's injuries.  Defendants advance four arguments in support of their motion: (1) plaintiff fails to state a claim that Delaware County/CEC have a custom or policy of denying inmates medical care in order to save costs, (2) plaintiff fails to allege that an official with final policy making authority established the alleged unconstitutional policy of denying medical care in order to save costs, (3) plaintiff fails to state a claim with regard to Delaware County/CEC's failure to train employees and (4) failure to have a policy requiring employees to follow up on outside doctors' orders.  In response, plaintiff expressly concedes and does not oppose defendants' motion on her failure to train claim.  See

Dkt. No. 22 at 8. Thus, I will dismiss plaintiff's failure to train allegations against Delaware County/CEC.

### A. Final Policymaking Authority

Defendants argue that plaintiff has failed to allege that an official with final policymaking authority is responsible for Delaware County/CEC's alleged policy of denying medical treatment to inmates in order to save money. See Dkt. No. 21 at 11. Generally, municipal entities "cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583 (3d Cir. 2003), citing Monell v. N.Y.C. Dep't. of Soc. Servs., 436 U.S. 658, 691 (1978). "Only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability." City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988). Whether an employee has final policymaking authority is a question of state law. See id. To find that an employee is an official policymaker requires more than a mere showing that the official "has discretion in the exercise of particular functions." Pembaur v. City of Cincinnati, 475 U.S. 469, 482 (1986). A final policymaker is an official who has "final, unreviewable discretion to make a decision or take action." Kneipp v. Tedder, 95 F.3d 1199, 1213 (3d Cir. 1996). Final policymaking authority, however, "may be delegated by an official who possesses such authority." Praprotnik, 485 U.S. at 124 (citation omitted). Thus, "in order to ascertain if an official has final policy-making authority and can bind the municipality by [their] conduct, a court must determine (1) whether, as a matter of state law, the official is responsible for making policy *in the particular area* of municipal business in question, and (2) whether the official's authority to make policy in that area is *final and unreviewable*." Hill v. Borough of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006) (citations omitted) (emphasis in original).

Plaintiff clearly alleges in her second amended complaint that Dr. Phillips had "final decision making authority over the drafting and implementation of GHCF policies and procedures related to medical care and treatment of inmates" and was responsible for all medical staff and the medical care of inmates at GHCF. Dkt. No. 20 at ¶ 12. At this early stage of the proceeding and absent briefing by the parties on this question, I will not find as a matter of law that Dr. Phillips was not a final policymaker for Delaware County/CEC with respect to the alleged failure to provide medical treatment to plaintiff. See Mazariegos v. Monmouth Cnty. Corr. Inst., No. 12-5626, 2014 WL 1266659, at *9 (D.N.J. Mar. 25, 2014) (denying motion to dismiss claims against defendant county based on prison warden's failure to ensure treatment of prisoner's blindness due to lack of briefing on the issue of warden's final policymaking authority). But see Miller v. Corr. Med. Sys., Inc., 802 F. Supp. 1126, 1132 (D. Del. 1992) (finding on summary judgment that prison doctor did not have final policymaking authority under state law even "if his decisions are final in practice" because he could be "overruled if he announced a 'policy' of not treating the plaintiff"); Newkirk v. Sheers, 834 F. Supp. 772, 786 (E.D. Pa. 1993) (finding on summary judgment warden and deputy warden did not possess final policymaking authority under state law). Thus, plaintiff has adequately alleged that Dr. Phillips has final policymaking authority over medical care at GHCF.

B.     **Failure to Have a Policy Regarding Outside Doctors**

Plaintiff alleges that Delaware County/CEC are liable for her injuries because they have unconstitutionally failed to implement a policy or procedure to follow up on outside doctors' orders or to provide inmates with access to outside medical specialists. See Dkt. No. 22 at 10. The acts of a government employee may be considered the result of policy or custom of a governmental entity under § 1983 in three circumstances: (1) where an officer or entity

promulgates a generally applicable statement of policy and the subsequent act complained of is an implementation of the policy; (2) no policy is announced but federal law has been violated by an act of the policymaker itself; and (3) the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious and the inadequacy of existing practice so likely to result in the violation of constitutional rights that the policymaker can reasonably be said to have been deliberately indifferent to the need. See Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (citations omitted). Here, plaintiff relies upon the third method of establishing municipal liability. She argues that the need for a policy regarding follow-up of outside doctor's orders by prison staff was obvious and that her injuries were likely in the absence of such a policy. Defendants contend that plaintiff has failed to state a claim because she has not made allegations of any instances of harm to other inmates due to the alleged lack of a policy to follow-up on outside doctors' orders. See Dkt. No. 21 at 8.

In order to adequately plead her claim that Delaware County/CEC have incurred liability under § 1983 for failure to create a policy pursuant to the third scenario discussed in Natale, plaintiff must sufficiently allege that Delaware County/CEC "(1) had notice that similar rights violations had occurred on such a widespread basis that they were likely to occur again and (2) failed to act to address that risk despite the known or obvious consequences of inaction." Peters v. Cmty. Educ. Ctrs., Inc., No. 11-850, 2014 WL 981557, at *4 (E.D. Pa. Mar. 13, 2014), citing Berg v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000).

In my prior opinion dismissing plaintiff's § 1983 claim against Delaware County/CEC I reasoned that plaintiff had not alleged any other instances of employees at GHCF declining to follow up on outside doctor's orders. See Dkt. No. 15 at 12. Again, plaintiff has failed to allege

7

any prior instances of inmates failing to receive proper medical care at GHCF due to the alleged lack of a policy regarding following outside doctor's orders. Thus, insofar as plaintiff relies on the third theory of Monell liability as stated in Natale, I find that she has failed to state a claim against Delaware County/CEC.

### C. Cost Saving Policy

To state a claim against Delaware County/CEC under § 1983 for the denial of medical treatment in violation of the Eighth Amendment, plaintiff must allege "(1) what the relevant policies are, (2) what basis [s]he has for thinking that 'policies to save money' affected h[er] medical treatment, or (3) what specific treatment [s]he was denied as a result of these policies." Winslow v. Prison Health Servs., 406 F. App'x 671, 674 (3d Cir. 2011). In my prior decision dismissing plaintiff's § 1983 claim against Delaware County in her first amended complaint, I found that plaintiff had sufficiently specified the relevant Delaware County/CEC policies at issue and the treatment that she was denied as a result. See Dkt. No. 15 at 10. I found, however, that she had not sufficiently alleged how those policies impacted her medical treatment and dismissed her claim with leave to amend. Id.

Plaintiff apparently interpreted my prior dismissal to be based upon her failure to adequately plead the medical impact of defendants' alleged denial of treatment. She reiterates that she suffered malunion of the bones in her wrist requiring surgery when she was released and that these harms were caused by defendants' denial of medical care for the final two months of her incarceration. See Dkt. No. 22 at 12, Dkt. No. 20 at ¶¶ 39-41.

But in terms of alleging a causal connection between defendants' alleged cost saving policy and the decision not to treat plaintiff's injury, plaintiff's second amended complaint remains insufficient. The only factual allegations that plaintiff relies upon to connect her lack of

treatment with the County's alleged cost saving policy are that she was due to be released within two months of her injury and was denied treatment. See Dkt. No. 22 at 11. Plaintiff provides no other factual allegations such as other instances in which treatment was denied to inmates injured near their release dates or specific statements by defendants that might show the alleged cost saving policy was the motivating factor in denying her medical treatment.

Thus, plaintiff has failed to sufficiently allege how Delaware County/CEC's alleged policy or custom of denying medical care to inmates near their release dates in order to save costs was the cause of defendants' alleged denial of medical treatment for her claimed injury and I will grant defendants' motion to dismiss Count III of plaintiff's second amended complaint.

## II.  Section 1983 Claim against Mullan and Craig

Defendants move to dismiss Count I of plaintiff's second amended complaint which claims Mullan and Craig are liable under § 1983 for deliberate indifference to plaintiff's serious medical needs. See Dkt. Nos. 21, 25. Defendants contend that only physicians may be held liable for deliberate indifference to the serious medical needs of inmates under § 1983 and that plaintiff only alleges that Mullan and Craig are medical staff employees.

The Eighth Amendment proscribes deliberate indifference to the serious medical needs of inmates. See Estelle v. Gamble, 429 U.S. 97, 104-05 (1994). "If a prisoner is under the care of medical experts" however, "a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Thus, the "general rule is that where a prisoner is being treated by medical personnel, non-physician prison officials cannot be deliberately indifferent for failing to intervene in the medical treatment." Glatts v. Lockett, No. 09-29, 2011 WL 772917, at *9 (W.D. Pa. Feb. 28, 2011). Defendants interpret these cases to state a rule that only physicians may be held liable for

deliberate indifference to an inmate's serious medical necessity. Defendants are mistaken. The general rule explained in Glatts "is not an absolute rule." Id.

First, only "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, [will] a non-medical prison official . . . not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Spruill, 372 F.3d at 236. Thus, non-physician prison officials with actual knowledge of mistreatment or non-treatment of an inmate's serious medical need may be liable for deliberate indifference under § 1983. See Glatts, 2011 WL 772917, at *9 (finding complaint failed to make sufficient factual allegations that the defendant prison officials had knowledge prison physician was mistreating the plaintiff).

Second, in Spruill, the Court of Appeals expressly considered a physician's assistant to be a medical expert for the purposes of deliberate indifference liability under § 1983. See Spruill, 372 F.3d at 237 (finding that plaintiff inmate had sufficiently stated a claim for deliberate indifference against prison physician and physician's assistant); see also Gould v. Wetzel, 547 F. App'x 129, 132 (3d Cir. 2013) (considering deliberate indifference claim against prison physician's assistant but finding complaint contained insufficient factual allegations to state a claim). Here, plaintiff alleges that Mullan is a "health care professional," a "medical staff employee" and a "PAC," which defendants note is presumably a physician's assistant. See Dkt. No. 20 at ¶¶ 17, 47, 51; Dkt. No. 21 at 9. Plaintiff alleges that Craig is a medical care professional and a "CRNP" which defendants note is presumably a Certified Nurse Practitioner. See Dkt. No. 20 at ¶¶ 16, 30; Dkt. No. 25 at 7. Plaintiff has sufficiently pled that Mullan and Craig are medical professionals involved in plaintiff's medical treatment giving rise to potential

10

liability for deliberate indifference to serious medical need under § 1983. Thus, I will deny defendants' motion to dismiss Count I of plaintiff's second amended complaint.

**III.   Conspiracy Claim**

Defendants contend that plaintiff has failed to adequately make out her claim for civil conspiracy under § 1983 set forth in Count II of her second amended complaint. "To state a section 1983 conspiracy claim, a plaintiff must allege: (1) the existence of a conspiracy involving state action; and (2) a depravation of civil rights in furtherance of the conspiracy by a party to the conspiracy." Marchese v. Umstead, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000). "The elements of a conspiracy are a combination of two or more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose." Hammond v. Creative Fin. Planning Org., Inc., 800 F. Supp. 1244, 1249 (E.D. Pa. 1992). To adequately state a claim for conspiracy under § 1983, "the plaintiff must make specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events." Id. While I am "mindful that direct evidence of a conspiracy is rarely available and that the existence of a conspiracy must usually be inferred from the circumstances . . . the rule is clear that allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." Capogrosso v. The Sup. Ct. of N.J., 588 F.3d 180, 184-85 (3d Cir. 2009), citing Crabtree By & Through Crabtree v. Muchmore, 904 F.2d 1475, 1481 (10th Cir. 1990); see also Adams v. Teamsters Local 115, 214 F. App'x 167, 175 (3d Cir. 2007) ("conclusory allegations of concerted action, without allegations of fact that reflect joint action, are insufficient" to state a claim for conspiracy). "Furthermore, when pleading a conspiracy claim, a plaintiff cannot rely upon subjective suspicion and speculation." Hagan v. Dolphin, No. 13-2731, 2014 WL

5242377, at *8 (M.D. Pa. Oct. 15, 2014), citing Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991).

Plaintiff's conspiracy claim is entirely conclusory and does not provide any factual averments that might state a plausible claim of agreement or concerted action between defendants.  In Capogrosso, the plaintiff brought judicial misconduct and conspiracy claims against various state court judges.  The Court of Appeals found that the plaintiff's allegation that judges had discussed her case in a hallway combined with a subsequent adverse ruling by one of those judges in her case did not allege sufficient facts to state a cognizable claim of conspiracy under § 1983.  Here, plaintiff does not even allege specific conversations occurred between defendants from which one might infer an agreement, let alone the substance of any such conversations.  Plaintiff merely states in a conclusory fashion that defendants "agreed," made a "collective decision" and "acted together, in concert and by agreement" to deny medical treatment to plaintiff.  Dkt. No. 20 at ¶¶ 58-64.  Plaintiff brings her conspiracy claim for the first time in her second amended complaint.  Thus, I will dismiss Count II of plaintiff's second amended complaint with leave to amend insofar as she can allege additional facts to state a claim for conspiracy.

## IV.     Punitive Damages

Defendants argue that plaintiff's claim for punitive damages should be dismissed because there are no factual allegations sufficient to support an award of punitive damages.  Punitive damages may be recovered against individual state actors.  See Moore v. Susquehanna Area Reg'l Airport Auth., No. 02-0535, 2005 WL 2430790, at *8 (M.D. Pa. Sept. 30, 2005).  Punitive damages may be assessed when the defendant's conduct "is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected

rights of others." Alexander v. Riga, 208 F.3d 419, 430-31 (3d Cir. 2000), quoting Smith v. Wade, 461 U.S. 30, 56 (1983).  While plaintiff has not alleged sufficient facts to raise a plausible claim that defendants were motivated by evil, the alleged absolute denial of medical treatment to plaintiff could amount to callous indifference to plaintiff's federally protected rights.[3]  When viewed in the light most favorable to plaintiff, plaintiff's allegations sufficiently state a claim for punitive damages and I thus will deny defendant's motion to dismiss punitive damages from plaintiff's complaint without prejudice to renewal after discovery.  See Doe 1 v. Cnty. of Fayette, No. 14-00196, 2014 WL 5493814, at *7 (W.D. Pa. Oct. 30, 2014) (finding that facts alleged stated claim for punitive damages based on callous indifference, although not malicious intent, and reasoning that further development of the facts might support a later dismissal of the punitive damages claim).

## CONCLUSION

For the reasons set forth more fully above, defendants' motion to dismiss will be granted as to plaintiff's § 1983 claims against Delaware County/CEC set forth in Count III and granted with leave to amend as to plaintiff's conspiracy claim set forth in Count II.  Plaintiff's claims against Lynch and Dixon will also be dismissed without prejudice to refiling.  Defendants' motion will be denied as to plaintiff's claims against Mullan and Craig set forth in Count I and denied as to

---

[3]  In my prior memorandum (Dkt. No. 15), I noted that "Winslow supports a finding that cost is a legitimate consideration in determining treatment." Dkt. No. 15 at 10.  That is correct.  "Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate to undue suffering or the threat of tangible residual injury . . . deliberate indifference is manifest." Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (citations omitted).  Additionally, "[s]hort of absolute denial, if necessary medical treatment [i]s . . . delayed for non-medical reasons, a case of deliberate indifference has been made out." Id.  Once treatment has begun, however, cost can be taken into account in determining appropriate treatment.  See Winslow v. Prison Health Servs., 406 F. App'x 671, 674 (3d Cir. 2011).  Here, plaintiff alleges that she was completely denied medical treatment due to a policy of cost savings, not that decisions about her treatment merely took cost into account.

plaintiff's assertion of punitive damages.

An appropriate Order follows.