IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIDGET SIMONDS | : | CIVIL ACTION |
| | : | NO. 13-7565 |
| v. | : | |
| | : | |
| DELAWARE COUNTY, et al. | : | |
| | : | |
| O'NEILL, J. | : | April 30, 2015 |

## MEMORANDUM

On February 2, 2015, plaintiff Bridget Simonds filed a third amended complaint against defendants Delaware County, Community Education Centers, Inc. (CEC), Dr. Ron Phillips, Kelly Mullan, H. Craig and medical staff employee John/Jane Doe. See Dkt. No. 30. Plaintiff alleges that defendants violated her Eighth Amendment right to necessary medical treatment while she was incarcerated at George Hill Correctional Facility (GHCF). Now before me are defendants Dr. Phillips, CEC and Delaware County's partial motion to dismiss plaintiff's third amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 31), plaintiff's response (Dkt. No. 32) and defendants' reply (Dkt. No. 33). For the following reasons I will deny defendants' motion in part and grant it in part.

## BACKGROUND

Plaintiff alleges that around December 28, 2011, she suffered an injury while on work release from her incarceration at Delaware County Prison. See Dkt. No. 30 at ¶ 20. Plaintiff was taken to Riddle Hospital and diagnosed with a "comminuted distal radial fracture with extension into the inta-articular space." Id. at ¶ 21. Plaintiff alleges she was discharged from Riddle Hospital with orders that "she must undergo an orthopedic evaluation in three days to determine the extent of her injuries." Id. at ¶ 22. She alleges that at GHCF she came under the care of Dr. Phillips, CEC and medical staff members Mullan, Craig and Doe and that all of her medical

providers know that she was required to have an orthopedic evaluation within three days of her discharge from Riddle Hospital. Id. at ¶ 23.

First, plaintiff contends that defendants failed to provide her with any medical treatment for her broken wrist for two months including denying her a cast and pain medication despite plaintiff allegedly filing two grievances requesting urgent medical care. Id. at ¶ 25-27. Second, plaintiff alleges that defendants failed to refer her to an orthopedic specialist within three days. Id. at ¶ 25. She contends that she was not provided access to an orthopedic specialist because of defendants' failure to have a policy or procedure in place to follow up on outside doctors' orders and also that defendants intentionally denied her access to an orthopedic specialist. Compare id. at ¶ 33 with ¶ 29. Third, plaintiff alleges that defendants denied her medical care pursuant to a policy of denying prisoners access to medical care near their release dates in order to save money. Id. at ¶ 32.

Plaintiff alleges that as a result of these actions, she was forced to suffer extreme pain for two months while she served the remainder of her sentence and that by the time she was released from custody on February 22, 2012 her bones had improperly set, causing her permanent nerve damage and paralysis in her right long finger and requiring her to undergo an operation on March 7, 2012. Id. at ¶¶ 40-41.

In plaintiff's third amended complaint, she asserts the following claims: (1) that defendants Dr. Phillips, Craig, Mullan and Doe are liable under 42 U.S.C. § 1983 for deliberate indifference to her serious medical needs (Count I); (2) that defendants Dr. Phillips, Craig, Mullan and Doe are liable under § 1983 for conspiracy to provide inadequate medical care (Count 2); (3) that Dr. Phillips, with final decision making authority, CEC and Delaware County are liable under § 1983 for failure to provide her medical care, for failure to adopt policies

regarding follow-up on outside doctors' orders and for maintaining a custom or policy of denying medical treatment to prisoners near their release dates in order to save costs (Count III) and (4) for negligence under Pennsylvania law against CEC and Dr. Phillips (Count IV). Moving defendants ask that I dismiss plaintiff's claims under § 1983 against Dr. Phillips in his official capacity, CEC and Delaware County (Count III) for failure to state a claim. See Dkt. No. 31.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Id. at 556. The Court of Appeals has made clear that after Ashcroft v. Iqbal, 556 U.S. 662 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556 U.S. at 678. The Court also set forth a two-part analysis for reviewing motions to dismiss in

light of Twombly and Iqbal:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

Id. at 210-11, quoting Iqbal, 556 U.S. at 679. The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679, quoting Fed. R. Civ. P. 8(a)(2).

## DISCUSSION

The only question before me is whether plaintiff has stated a claim of municipal liability, a Monell claim, under § 1983 against Dr. Phillips, CEC and Delaware County. Generally, municipal entities "cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583 (3d Cir. 2003), citing Monell v. N.Y.C. Dep't. of Soc. Servs., 436 U.S. 658, 691 (1978). Instead, to establish municipal liability plaintiffs must generally allege there is a municipal "policy or custom, and that the policy caused the constitutional violation they allege." Id. The acts of a government employee, however, may be considered to trigger Monell liability as the result of policy or custom of a governmental entity in three circumstances: (1) where an "officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is an implementation of the policy," (2) no policy is announced but "federal law has been violated by an act of the policymaker itself" and (3) "the policymaker has failed to act

affirmatively at all, though the need to take some action to control the agents of the government is so obvious and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." Natale, 318 F.3d at 584 (internal citations omitted). Plaintiff contends that she has "sufficiently alleged all three grounds for municipal liability" under Natale based on the alleged actions of Dr. Phillips. See Dkt. No. 32 at ECF 10.[1]

## I.     Violation of Federal Law by an Act of the Policymaker

Plaintiff contends that she has stated a Monell claim under the second prong of Natale because she has adequately pled that Dr. Phillips, as a policymaker with final decision making authority over medical treatment at GHCF, violated federal law when he was deliberately indifferent to her serious medical needs by failing to provide any medical treatment for her broken wrist for two months. "If the decision to adopt a particular course of action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." Pembaur v. City of Cincinnati, 475 U.S. 469, 470 (1986). The Court of Appeals has stated that "[t]he Supreme Court's decision in Pembaur makes clear that an official with policymaking authority can create official policy, even by rendering a single decision. As the Court stated in that case, 'it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances.'" McGreevy v. Stroup, 413 F.3d 359, 367-68 (3d Cir. 2005), citing Pembaur, 475 U.S. at 480; see also Stuby v. Bedford Cnty., No. 3:12-47, 2013 WL 5724065, at *11 (W.D. Pa. Oct. 21, 2013).

---

[1]     Plaintiff concedes that her third amended complaint fails to state a claim for failure to train, discipline or investigate and thus I will dismiss those claims. See Dkt. No. 32 at ECF 1, 17.

I have already found that plaintiff has adequately claimed Dr. Phillips has final policymaking authority over medical care at GHCF and moving defendants concede this point for the purpose of their partial motion to dismiss plaintiff's third amended complaint. See Simonds v. Delaware Cnty., No. 13-7565, 2015 WL 289974, at *3 (E.D. Pa. Jan. 21, 2015); Dkt. No. 33 at ECF 3. I have also already found that plaintiff has adequately pled a claim of deliberate indifference to serious medical need against Dr. Phillips for his alleged failure to provide her any medical treatment for her broken wrist. See Simonds v. Delaware Cnty., No. 13-7565, 2014 WL 3030435, at *4 (E.D. Pa. July 1, 2014). I find now that plaintiff has adequately pled a § 1983 claim for deliberate indifference to serious medical need against CEC and Delaware County based upon Dr. Phillips' alleged failure to provide medical care to plaintiff. See Mazariegos v. Monmouth Cnty. Corr. Inst., No. 12-5626, 2014 WL 1266659, at *9 (D.N.J. Mar. 25, 2014) (finding complaint stated Monell claim against the defendant County based upon a prison warden's alleged failure to provide medical care to an inmate). Thus, I will deny defendants' motion to the extent that plaintiff states a claim under the second prong of Natale based on Dr. Phillips' alleged denial of medical treatment to plaintiff.

## II.    Single Incident Liability

Plaintiff attempts to resuscitate her previously dismissed claims under the third prong of Natale by simply alleging that instead of only Delaware County/CEC, it is now Dr. Phillips' failure to have a policy or procedure in place to follow up on the orders of outside physicians upon which her Monell claim is premised. See Dkt. No. 30 at ¶¶ 33, 35; Dkt. No. 32 at ECF 17. Thus, plaintiff again contends that she has stated a Monell claim under the third prong of Natale because defendants failed to have a policy in place "requiring medical providers at GHCF to follow-up on the orders of outside physicians," Dkt. No. 32 at ECF 13, and that the "need for

such a policy or procedure was obvious and required to ensure that an inmate[']s constitutional right to adequate medical care was protected . . . ." Dkt. No. 30 at ¶ 35. While "it is possible to establish deliberate indifference based on a single incident . . . this showing is available in a very narrow range of circumstances." Peters v. Cmty. Educ. Centers, Inc., No. 11-CV-850, 2014 WL 981557, at *9 (E.D. Pa. Mar. 13, 2014). Plaintiff has not pled facts sufficient to give rise to a reasonable inference that the need for such a policy was "obvious" to ensure adequate medical care at GHCF. While I have previously dismissed plaintiff's essentially identical theory of liability, see Simonds, 2015 WL 289974, at *3 (E.D. Pa. Jan. 21, 2015), I will take this opportunity to clarify my previous opinion on this issue. Plaintiff's claim fails for several reasons.[2]

The lack of a policy regarding follow-up on outside doctors' orders is distinguishable from the kinds of situations courts have found to be "so obvious" that they constituted deliberate indifference to the right to adequate medical care. In those cases, the plaintiff alleged that there was a failure of a system or process that might have been remedied by an institutional policy.[3] For example, in Natale, a diabetic was not provided insulin that he needed upon incarceration.

---

[2] As a threshold matter, "language explaining deliberate indifference with respect to failure-to-train claims has been used generally and is instructive on what kinds of consequences are obvious or not." Pelzer v. City of Phila., 656 F. Supp. 2d 517, 534 (E.D. Pa. 2009). Similarly, the Court of Appeals has stated that it applies "the Supreme Court's rulings in failure-to-train cases to other claims of liability through inaction." Berg v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000). Indeed, "single incident" liability under the third prong of Natale is premised upon the Supreme Court's failure-to-train decision in City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989) and the Court of Appeals' decision in Berg. See Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (citing Canton and Berg for single-incident theory of Monell liability). "Though Berg," Natale and other cases discussed here "arose in the context of a motion for summary judgment, [their] reasoning is helpful to us here." Washington v. City of Phila., No. 11-3275, 2012 WL 85480, at *9 (E.D. Pa. Jan. 11, 2012).

[3] Plaintiff does include in her third amended complaint a conclusory allegation that there is an inadequate system of review of claims of inadequate medical care at GHCF generally, which is distinct from her specific allegations regarding failure to follow up on outside doctor's orders. See Dkt. No. 30 at ¶ 74.

The Court of Appeals found that a prison with "no policy ensuring that an inmate having need for medication for a serious medical condition would be given that medication during the first 72 hours of incarceration" was a "particularly glaring omission in a program of medical care" that a jury could conclude was "sufficiently obvious to constitute deliberate indifference to those inmates' medical needs." Natale, 318 F.3d at 584-85.

Similarly, in Berg v. County of Allegheny, 219 F.3d 261, 277 (3d Cir. 2000), the Court of Appeals held that a single incident could give rise to Monell liability "where a failure to protect against 'simple mistakes' was likely to lead to constitutional violations." There, the Court of Appeals denied the defendants' summary judgment motion since the defendant County's warrant issuing system "employed a design where the slip of a finger could result in wrongful arrest and imprisonment," creating "an issue of fact whether the County was deliberately indifferent to an obvious risk." Berg, 219 F.3d at 276. However, since government inaction can "ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations . . . without demonstrating such a pattern . . . the burden on the burden on the plaintiff in such a case is high." Id. That burden is consistent with Turner v. City of Philadelphia, 22 F. Supp. 2d 434 (E.D. Pa. 1998), where the Court reasoned that, "absent unusual circumstances, proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incidents includes proof that it was caused by an existing, unconstitutional municipal policy." Id. at 437.

In both Berg and Natale, the plaintiffs brought claims based on a specific and obvious problem with a procedure employed by the defendant that gave rise to a likelihood of constitutional deprivation. First, here "[i]t is not obvious that the existing policies of [GHCF] would have been insufficient to address the serious medical needs of prisoners" including

8

plaintiff.  Dickson v. Cnty. of Gloucester N.J., No. 05-1444, 2007 WL 928477, at *5 (D.N.J. Mar. 27, 2007).  "Plaintiff has not alleged any facts about the current [ ] system" regarding outside doctors' orders at GHCF "to satisfy the single-incident deliberate indifference standard [Natale] obliges [me] to apply."  Washington v. City of Phila., No. 11-3275, 2012 WL 85480, at *9 (E.D. Pa. Jan. 11, 2012) (dismissing Monell claim premised on the City of Philadelphia's allegedly inadequate review procedures for allegations of police misconduct).  Rather, plaintiff's "complaint notably fails to allege any facts showing that the [defendants'] system has no protective measures in place" to ensure that outside doctors' orders are followed.  Id.  Plaintiff has not alleged facts that would give rise to an inference that there was an obvious need for a specific policy instructing medical staff at GHCF to follow up on outside doctor's orders or that there was a substantial risk of constitutional deprivation because of a flaw in the GHCF's policy or procedure of handling those orders.

Second, plaintiff's allegations do not indicate "the systemic deficiency at issue in Natale because [defendants' alleged] practice does not create a period of time during which an inmate's special medical needs can go unobserved."  Peters v. Cmty. Educ. Centers, Inc., No. 11-850, 2014 WL 981557, at *10 (E.D. Pa. Mar. 13, 2014).  On the contrary, plaintiff alleges that it was not a system failure but rather that it was the deliberate choice of GHCF's medical staff, with actual knowledge of the outside doctor's order, to ignore that order with malice.  See Dkt. No. 30 at ¶¶ 23-31.  As I have already found, those allegations give rise to a claim for deliberate indifference against Dr. Phillips.  Simonds, 2014 WL 3030435, at *3-4 (E.D. Pa. July 1, 2014).  A deliberate failure to treat or completely ignore a previous treating doctor's order is already proscribed by law.  See id., at *4 ("When prison doctors or medical authorities deliberately ignore the orders of a prisoner's prior physician, such acts are sufficient to allege a violation of

9

the Eighth Amendment."), citing White v. Napoleon, 897 F.2d 103, 107 (3d Cir. 1990). Plaintiff's allegations that defendants had actual knowledge of her condition distinguish her claims from the situation in Natale, where the prison's policy was lacking allegedly for the very reason that it did not ensure a doctor had actual knowledge of prisoners' medical conditions within 72 hours of entry into the prison. See Natale, 318 F.3d at 584-85. In the prison medical policies at issue in Natale, a medical assistant was "not otherwise required to pass on [medical] information" and "[n]o one could provide an inmate with medication without having first obtained an order from a doctor" but at the same time

> [t]here was no requirement that a doctor see an inmate during the first 72 hours of incarceration and no one was charged with determining whether an inmate should be seen by a doctor earlier in the 72-hour period. As a result, there was no policy ensuring that an inmate having need of medication for a serious medical condition would be given that medication during the first 72 hours of his incarceration.

Id. In contrast, here plaintiff has not alleged factual details of a systemic deficiency leading to the failure of a doctor to review her medical situation. To the contrary, plaintiff has alleged that Dr. Phillips had actual knowledge of her medical needs but deliberately ignored them. Likewise, she has not alleged any factual details that would give rise to an inference that the failure to follow up on outside doctors' orders in her case was due to a failure to protect against "simple mistakes" made likely by the design of GHCF's system of medical care. Berg, 219 F.3d at 277.

Relatedly, plaintiff has not alleged any facts indicating that the lack of a policy specifically governing outside doctors' orders is causally connected to her injuries because she only alleges that defendants deliberately ignored her outside doctors' orders and failed to provide any medical treatment for her allegedly serious injury. Thus, "the lack of a more specific policy was not the proximate cause of the plaintiff's injury." Dickson, 2007 WL 928477, at *5;

Mohammed v. John Doe Pa. State Police Supervisors, No. 11-5004, 2013 WL 5741788, at *10 (E.D. Pa. Oct. 23, 2013) ("[I]t is not obvious that additional training may be needed with respect to the individual officers' response to fleeing subjects" where the plaintiff "fails to demonstrate any additional training that the officers should have received that would have caused the [defendants] to act differently.").

Finally, plaintiff also has not alleged any facts that might give rise to an inference that the "inadequacy of existing practice" at GHCF for handling outside doctor's orders was "so likely to result in the violation of constitutional rights that the policymaker can reasonably be said to have been deliberately indifferent to the need." See Natale, 318 F.3d at 584; E.K. v. Massaro, No. 12-2464, 2013 WL 5539357, at *5 (D.N.J. Oct. 7, 2013) (dismissing complaint where the plaintiff provided "no allegations suggesting . . . that Student–Teachers or other teachers would, in the course of their duties, run an obvious risk of sexually assaulting their students."). To clarify my previous opinion in this case, see Simonds, 2015 WL 289974, at *4 (E.D. Pa. Jan. 21, 2015), one method of injecting plausibility into plaintiff's claim that the lack of a policy regarding outside doctor's orders was an obvious risk likely to give rise to a constitutional violation is by pleading other instances of harm suffered by inmates as a result of the alleged deficient policy.[4] Of

---

[4] See Estate of Arrington v. Michael, 914 F. Supp. 2d 650, 664-65 (E.D. Pa. 2012) (granting summary judgment for the defendants under third prong of Natale where plaintiff's Monell claim "pointed to no similar incidents in the past which would have put the [defendants] on notice that their failures to act would likely result in the tragic outcome that resulted here" and that "no reasonable factfinder could conclude that these policies . . . were so obviously inadequate as to permit imposition of Monell liability without a pattern of similar prior violations" where the defendant officer had not followed training and guidance provided to him) rev'd and remanded on other grounds, 738 F.3d 599 (3d Cir. 2013); Veanus v. Northampton Cnty. Prison, 238 F. App'x 753, 755 (3d Cir. 2007) (granting summary judgment for the defendants on the plaintiff's Monell claim that prison failed to implement standardized policy for handling bunk assignment requests that were medically necessary because evidence showed the prison assumed medical staff would handle such requests and there was no evidence that any other prisoner besides the plaintiff was denied a lower bunk, had fallen from a top bunk or

course, pleading other incidents is not necessary under the third prong of Natale, but "[i]t is only in the rare circumstance" where "a single incident could demonstrate deliberate indifference" because "without notice . . . decsionmakers can hardly be said to have deliberately chosen" a policy "that will cause violations of constitutional rights."  Peters v. Cmty. Educ. Centers, Inc., No. 11-850, 2014 WL 981557, at *5 (E.D. Pa. Mar. 13, 2014), citing Connick v. Thompson, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011).  For example, in Pelzer v. City of Philadelphia, 656 F. Supp. 2d 517, 534 (E.D. Pa. 2009) the Court considered whether the Philadelphia Police Department's failure to institute adequate foot pursuit tactics was so obviously likely to lead to constitutional violations that it gave rise to Monell liability pursuant to the third prong of the Natale standard.  The Pelzer Court reasoned that "recurrence, apparentness, and the likelihood of constitutional injury are a few of the factors to be taken into account" when assessing whether the government has been "deliberately indifferent to the obvious risks" of a choice.  Pelzer, 656 F. Supp. 2d at 534.  Since the factual circumstances of her claims are distinct from Natale and she does not allege an obviously deficient procedure or policy, pleading other instances of similar harm might have injected plausibility into plaintiff's claim that the lack of a specific policy regarding outside doctors' orders is likely to result in constitutional violations at GHCF.  Plaintiff does not plead any factual allegations that would provide for such an inference.  Thus, I will grant defendants' motion to dismiss plaintiff's claims premised on defendants' alleged

---

complained about the issue); Dickson v. Cnty. of Gloucester N.J., No. 05-1444, 2007 WL 928477, at *5 (D.N.J. Mar. 27, 2007) (granting summary judgment to the defendant County on the plaintiff's Monell claim under the third prong of Natale because "[w]ithout any history of misconduct it is unlikely that the policy maker . . . will deem the existing policies and practices of Gloucester County to be inadequate to address the serious medical needs of its inmates" and that "it is not obvious that the existing policies of [the prison] would have been insufficient to address the serious medical needs of prisoners" because the prison's policy "requires officers to address the medical needs of prisoners.").

failure to have a policy or procedure in place requiring doctors to follow up on outside doctors' orders.

### III.  Custom or Policy

Plaintiff also attempts to resuscitate her claims that defendants maintained an unconstitutional policy of saving costs by denying medical treatment to prisoners near their release dates under the first prong of Natale by simply substituting Dr. Phillips for Delaware County/CEC as the final policymaker responsible for promulgating the alleged cost saving policy.  See Dkt. No. 30 at ¶¶ 32, 36, 72; Dkt. No. 32 at ECF 17.  Thus, plaintiff contends that Dr. Phillips "promulgated a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy."  Natale, 318 F.3d at 584; Dkt. No. 32 at ECF 14.  "A plaintiff must establish causation by properly pleading that the municipality's policy or custom 'was the source of [his or] her injury.'"  Cloyd v. Delaware Cnty., No. 14-4833, 2015 WL 1312524, at *3 (E.D. Pa. Mar. 23, 2015) (dismissing claim for failure to adequately plead causation), citing Santiago v. Warminster Twp., 629 F.3d 121, 135 (3d Cir. 2010).  I reiterate that plaintiff's allegations are too conclusory and that there is not a sufficient basis in her factual allegations to infer that a policy to save costs was the cause of her injury.  Merely coupling a conclusory allegation of a policy to save costs by denying treatment to a single inmate with a release date two months away from the alleged injury, without more, does not state a claim for Monell liability under the first prong of Natale.  See Simonds, 2014 WL 3030435, at *5 (E.D. Pa. July 1, 2014); Simonds, 2015 WL 289974, at *4-5 (E.D. Pa. Jan. 21, 2015).  Plaintiff has not substantively amended her complaint regarding an alleged policy of denying medical treatment to prisoners near their release dates in order to save costs and thus I will grant defendants' motion to dismiss her claims to the extent they are based on that theory of liability.

**CONCLUSION**

For the foregoing reasons, I will deny defendants' motion to dismiss with regard to plaintiff's <u>Monell</u> claim premised on Dr. Phillips' alleged denial of treatment and will grant defendants' motion with regard to plaintiff's <u>Monell</u> claims premised upon Dr. Phillips' alleged failure to implement a policy requiring follow-up of outside doctors' orders and alleged promulgation of a policy to deny medical treatment to plaintiffs near their release dates in order to save costs.

An appropriate Order follows.